**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
PETER CAPONE, THE CAPONE
REVOCABLE TRUST, PETER CAPONE
DEFINED BENEFIT PENSION PLAN, and
CHEAPEAKE HILLS GENERAL
PARTNERSHIP,

                             Plaintiffs,

                        - against -

MARK GOLDMAN, JEFFREY DANIELS,
ANDREA GOLDMAN, GOLDMAN AND
GOLDMAN, LLC, P.C. JEFFREY C. DANIELS
LEVIN & DANIELS, LLC,

                            Defendants.
----------------------------------------------------------X

                                      **REPORT AND**
                                 **RECOMMENDATION**

                              CV 09-1208 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.    <u>PRELIMINARY STATEMENT</u>

      This action arises out of an alleged Ponzi scheme involving certain real estate

transactions in which Plaintiffs claim they were defrauded by Defendants.  One of the

Defendants, Andrea Goldman, moves for an Order scheduling a hearing on shortened notice to

consider the entry of an Order (1) vacating a *lis pendens* filed by Plaintiffs and (2) imposing

sanctions against Plaintiffs and their counsel [DE 31, 32].  This motion was referred to me by

District Judge Feuerstein to conduct the requested hearing on an expedited basis and to issue a

Report and Recommendation concerning the relief requested by Defendant Andrea Goldman

("Defendant" or "Andrea Goldman").

      In reaching a determination on these issues, I have considered the following written

submissions:

- a June 11, 2009 letter from counsel for Defendant Andrea Goldman to Judge Feuerstein [DE 31];

- Defendant Andrea Goldman's motion for an Order to Show Cause seeking an expedited hearing to consider the entry of an order vacating a *lis pendens* filed by Plaintiffs as well as the imposition of sanctions [DE 32], as well as the accompanying

  - Affidavit of Fred S. Kantrow, Esq. in support of the motion;

  - Motion of Defendant Andrea Goldman Seeking the Entry of an Order Vacating the Improperly Filed *Lis Pendens* and Seeking the Imposition of Sanctions Against Plaintiffs and Their Counsel, as well as the exhibits attached thereto;

- a June 11, 2009 letter from Plaintiffs' counsel responding to Defendant's June 11, 2009 letter [DE 33];

- Affirmation in Support of the Entry of an Order Vacating Lien submitted by David A. Blansky, Esq., attorney for Allan B. Mendelsohn, the Chapter 7 Trustee (the "Trustee") of the estate of Goldan LLC,[1] as well as the attached Reply Affirmation of David A. Blansky, Esq. which was submitted to the United States Bankruptcy Court for the Eastern District of New York in further support of a Motion Seeking Court Approval of a Stipulation of Settlement with Andrea Goldman [DE 34];

- a June 15, 2009 letter from Plaintiffs' counsel responding to the Blansky Affirmation and attaching opposition papers and exhibits that were submitted to the United States Bankruptcy Court in opposition to the Application of the Chapter 7 Trustee for Approval of a Settlement with Andrea Goldman and Sale of Real Property and Disposition of Proceeds [DE 35];

- a June 17, 2009 post-hearing letter from Plaintiffs' counsel in opposition to Defendant's motion to cancel the *lis pendens* [DE 37] (submitted with the Court's permission).

In addition, I have carefully considered the case law applicable to the current motion.

Counsel for Plaintiffs and Defendant Andrea Goldman, as well as counsel for the Trustee,

appeared for the June 16, 2009 expedited hearing. During that hearing, I stated that Defendant's

---

[1] Although there is some question as to the Trustee's standing to be heard in this action, the Court finds that the Trustee is unquestionably an interested party. Without resolving the question of the Trustee's standing, I have nonetheless reviewed the Trustee's written submissions and listened to his arguments during the hearing. On the record before me, it is important to note that my decision here would be the same, with or without the arguments advanced by the Trustee.

2

request for sanctions is essentially a Rule 11 motion.  In accordance with Fed. R. Civ. P. 11, a party must proceed by separate motion on notice and in compliance with the "safe harbor" provisions set forth in the Rule.  Because those procedures were not followed here, I informed the parties that I would not consider the specific request for relief based on Rule 11 and that Defendants were free to file a Rule 11 motion separately if they felt they had a good faith basis for doing so.

Having reviewed all of the written submissions as well as the applicable case law, and having heard argument from the parties during the June 16, 2009 hearing, I respectfully recommend to Judge Feuerstein that Defendant Andrea Goldman's motion to vacate the *lis pendens* be DENIED for the reasons set forth below.

## II.   <u>BACKGROUND</u>

The Complaint in this matter alleges that Defendants Mark Goldman and Jeffrey Daniels engage in a "criminal Ponzi scheme through which they have looted at least $50,000,000 from innocent victims."  Compl. ¶ 1.[2]  Plaintiffs claim that they "entrusted more than $10,000,000 with Goldman and Daniels . . . only to discover that [Defendants] defrauded [Plaintiffs], that the real estate transactions were illusory, and that Goldman and Daniels have his money."  *Id.*, ¶ 2. According to Plaintiffs, "Goldman is now engaged in a dishonest bid to hide his assets from the victims of his fraud" and has "transferred his personal residence . . . to his wife, defendant

---

[2]     The Court is aware that Plaintiffs filed an Amended Complaint on April 17, 2009. However, "only the original complaint, which was filed with the lis pendens, pertains to this motion."  *DLJ Mortgage Capital, Inc. v. Kontogiannis*, 2009 WL 1652253, at *2 (E.D.N.Y. June 4, 2009) (citing *5303 Realty Corp. v. O & Y Equity Corp.*, 64 N.Y.2d 313, 320 (N.Y. 1984) ("[T]he complaint filed with the notice of pendency must be adequate unto itself; a subsequent amended complaint cannot be used to justify an earlier notice of pendency.")).

Andrea Goldman, for no consideration, in a fraudulent conveyance." *Id.*, ¶ 3.  Plaintiffs assert

that they have "commenced this action to recover the money stolen by defendants Goldman and

Daniels, and to set aside the fraudulent conveyance so that Goldman's assets will be available to

his creditors, specifically plaintiffs as the victims of Goldman and Daniels' theft and fraud."

*Id.*, ¶ 4.

The Complaint sets forth three claims for relief.  The first and second claims are based on

fraud and conversion.[3]  The third claim for relief alleges that Defendants Mark and Andrea

Goldman "have committed fraud in connection with the conveyance of the Goldman Residence,

and the Court should direct that the Goldman Residence is subject to a constructive trust in favor

of the plaintiffs herein." *Id.*, ¶ 55.  Additionally, Plaintiffs claim that Defendants Mark and

Andrea Goldman "are liable for all damages caused by their fraudulent transfer of assets . . .

together with punitive damages in the amount of $5,000,000. *Id.*, ¶ 56.

In paragraphs 45 through 49 of the Complaint, Plaintiffs provide more particularized

allegations as to their claim that Defendant Mark Goldman has attempted to "hide his assets from

the victims of his fraud." *Id.*, ¶ 45.  Specifically, Plaintiffs allege that in September 2007, Mark

Goldman transferred his ownership interest in the residence located in Oyster Bay Cove, New

York (the "Property"), which had been held jointly in both his name and his wife Defendant

Andrea Goldman's name, solely to his wife. *Id.*, ¶ 46.  Plaintiffs further allege that this transfer

was made "without fair consideration and "with the intent to defraud Capone and Goldman's

other creditors." *Id.*, ¶ 47-48.  Further, Plaintiffs allege that this transfer of ownership "was done

---

[3]     The Amended Complaint contains new claims for relief based upon alleged violations of
the RICO statute, 18 U.S.C. § 1961 <u>et seq.</u>, breach of fiduciary duty, breach of contract, and for
money had and received.

when Goldman was insolvent and subject to the claims of Capone and the other victims of

Goldman's criminal Ponzi scheme." *Id.*, ¶ 49.   In the "Wherefore" clause at the end of their

Complaint, Plaintiffs request that with regard to the Third Claim, the Court should direct that the

Property "be placed in a constructive trust for the benefit of the plaintiffs, and awarding damages

in an amount to be determined at trial together with punitive damages. . . ."

The Complaint also contains allegations pertaining to Goldan LLC, a "limited liability

company that was owned by Goldman and Daniels."  Compl. ¶ 16.[4]  Goldan LLC was a real

estate company; *see* June 15, 2009 letter of Mark R. Kook, Esq. [DE 33].  Goldan LLC is

mentioned only once in the Complaint and has not been named as a party in this action.

Defendant asserts, however, that Plaintiffs have previously filed five actions in New York State

Supreme Court (the "state court actions") that allege substantively identical claims and in which

Goldan LLC *is* a named defendant.  Importantly, the Complaint contains no allegation that the

Property was ever owned, maintained, or supported by Goldan LLC.

On February 18, 2009, approximately seventeen months after the allegedly fraudulent

transfer of the Property occurred, an involuntary Chapter 7 bankruptcy petition was filed against

Goldan LLC in the United States Bankruptcy Court for the Eastern District of New York.  Mot.

of Def. Andrea Goldman Seeking the Entry of an Order Vacating the Improperly Filed *Lis*

*Pendens* & Seeking the Imposition of Sanctions Against the Pls. & their Counsel ("Def. Mot.") at

¶¶ 5-6.  Two days later, on February 20, 2009, an Order for Relief was entered against Goldan

---

[4]      The Complaint does not provide any further explanation as to what type of entity Goldan
LLC is.  Nor have the written submissions or arguments at the hearing shed much light on
Goldan LLC's role in the alleged fraud, if any, other than a general contention that some of the
funds allegedly stolen by Defendant Mark Goldman may have been funneled through Goldan
LLC.

LLC. *Id.*, ¶ 6. A month after the Chapter 7 petition was filed against Goldan LLC, the Complaint in this action was filed on March 24, 2009 against Mark Goldman, Jeffrey Daniels, Andrea Goldman and two corporate entities. Some six days later, on March 30, 2009, Plaintiffs filed a *lis pendens*[5] on the Property.

Prior to the commencement of this action, Andrea Goldman apparently began the process of selling the Property and negotiated with the Bankruptcy Trustee "to reach an accommodation that would allow Andrea to sell the property, receive a portion of the proceeds, and allow the bankruptcy estate to obtain funds that would benefit all of the creditors of [Goldan LLC's] estate." *Id.,* ¶¶ 9, 11.[6] During the June 16 hearing, counsel for Defendant Andrea Goldman stated that the potential buyer of the Property would not execute a contract of sale[7] while the title report reflects the *lis pendens*. Counsel further stated that if the Property is not sold, Andrea Goldman will simply remain in the house until foreclosure proceedings are commenced, at which point all equity in the home will be lost. Accordingly, Andrea Goldman contends that "Plaintiffs' improperly placed *lis pendens* has effectively precluded the bankruptcy trustee from

---

[5]  As a number of courts have noted, the bench and bar use the terms "notice of pendency" and "*lis pendens*" interchangeably. *See, e.g., DLJ Mortgage Capital, Inc. v. Kontogiannis*, 2009 WL 1652253, at *1 n.1 (E.D.N.Y. June 4, 2009); *Ulysses I & Co., Inc. v. Feldstein*, 2002 WL 1813851, at *17 n.9 (S.D.N.Y. Aug. 8, 2002); *Am Motor Club, Inc., v. Neu*, 109 B.R. 595, 596 n.1 (Bankr. E.D.N.Y. 1990). Accordingly, this Report and Recommendation shall do likewise.

[6]  Andrea Goldman and the Bankruptcy Trustee entered into a stipulation authorizing the sale, and the stipulation is currently before the Bankruptcy Court for review. Plaintiffs filed an objection to the stipulation. Def. Mot. at ¶¶ 11-12.

[7]  Whether a contract of sale has actually been entered into between Defendant Andrea Goldman and a potential buyer of the property is unclear. *See* Affidavit of Fred S. Kantrow, Esq. ¶ 5-7 (stating that a contract of sale has been entered into and the potential buyer obtained a title report in preparation for closing).

realizing the equity in the [Property] and thus has enabled these Plaintiffs to jump ahead of other similarly situated creditors of Goldan . . . ." *Id.,* ¶ 12.

## III.    THE PARTIES' CONTENTIONS

### A.    The Timing of the Filing of the *Lis Pendens*

Defendant Andrea Goldman emphasizes that Plaintiffs filed the *lis pendens* after the involuntary bankruptcy proceeding was commenced against Goldan LLC on February 18, 2009. During the hearing on the order to show cause, Defendant acknowledged that the Property may otherwise be found to be part of the bankrupt estate based on allegations that the Property was maintained and improved with monies procured through the alleged illegal activity of Mark Goldman, Jeffrey Daniels, and Goldan LLC.  Prior to the commencement of this action, Plaintiffs brought five other actions in New York Supreme Court against Defendants Mark Goldman and Jeffrey Daniels (Defendants in this action) as well as Goldan LLC (not a named Defendant here). Def. Mot. ¶ 4.  According to Defendant, therefore, Plaintiffs are creditors of the Goldan LLC bankrupt estate and any relief they seek should be brought before the Bankruptcy Court.  *Id.*, ¶ 5. Defendant argues that even though "all of the alleged wrongdoing of Goldman and Daniels was done through Goldan," Plaintiffs have excluded Goldan LLC as a defendant in this action in an attempt to "'get around' the Bankruptcy Court" proceedings.  *Id.* ¶¶ 7, 8.

Defendant contends that the *lis pendens* has impeded the sale of the Property and, as such, "the imposition of the *lis pendens* has interfered with the bankruptcy trustee's rights and the estate's potential recoveries for the benefit of all creditors of the estate."  *Id.* ¶ 13.  Defendant asserts that by filing the *lis pendens*, Plaintiffs are attempting to elevate themselves above the other creditors of the Goldan LLC bankrupt estate.  *Id.*

In opposition, Plaintiffs argue that their claims in this action should not be "subsumed within" the bankruptcy proceeding.  Pls. June 17, 2009 letter (Pls. Opp'n) at 1.  Plaintiffs maintain that their claims are properly made against Mark Goldman – not against Goldan LLC – and that they have lost approximately $12 million dollars due to "RICO crimes, fraud and conversion" on the part of Mark Goldman and Jeffrey Daniels.  *Id.*  Plaintiffs maintain that they did not intend to interfere, and have not actually interfered, with the bankruptcy proceeding against Goldan LLC because "the [P]roperty was never in the name of Goldan, and there is no title reference to Goldan."  Finally, Plaintiffs claim that "the law is clear that the filing or continuation of a Notice of Pendency, even when there was notice of an actual claim by a bankruptcy debtor in the subject property, does not violate or implicate the automatic stay provisions of the bankruptcy code."  *Id.* at 2.

**B.      Whether the *Lis Pendens* Should Be Cancelled**

Defendant Andrea Goldman claims that Plaintiffs have not met the statutory requirements for filing a *lis pendens* because Plaintiffs have not "proffered allegations that would affect the title to, or the possession, use or enjoyment of real property."  Def. Mot. ¶ 14.  According to Defendant, Plaintiffs' allegations that the Property was transferred without fair consideration and that the transfer was made with an intent to defraud Plaintiffs and Goldman's other creditors are "conclusory."  *Id.* ¶ 15.  Defendant notes that while Plaintiffs "appear[]" to "have made allegations under the New York Debtor & Creditor Law," the Complaint does not specifically refer to this statute.  *Id.*  Moreover, Defendant asserts that Plaintiffs' allegations "fail to state why the alleged transfer of the . . . Property constitutes a fraudulent conveyance."  *Id.* ¶ 21.  During oral argument, Defendant pointed out that although the Complaint states that "Goldman has *now*

8

embarked on a fraudulent and criminal effort to hide his assets," *see* Compl. ¶ 45 (emphasis added), the transfer in question occurred in September 2007 – approximately two and a half years before the Complaint was filed.  Defendant concludes that Plaintiffs have made "a loose allegation" that the Property was fraudulently transferred, and that such allegation was made "simply with the idea of filing the *lis pendens* rather than with proper recovery in mind."  Def. Mot. ¶ 16.

Further, Defendant argues that even if the Court deems Plaintiffs' allegations to be true, the relevant test to determine whether the *lis pendens* was properly filed is whether Plaintiffs make any claim to some right, title or interest in Defendant's lands.  *Id.* ¶ 22.  Defendant emphasizes that "Plaintiffs have absolutely no interest in the subject real property."  *Id.* ¶ 23.  According to Defendant, the Complaint "does not allege that the . . . Property was purchased with funds fraudulently removed from Goldan (to which the Capone money was directed)."  *Id.* ¶ 25.

It is Defendant's position that Plaintiffs have essentially asserted a claim for money damages and that the "primary purpose" of this action is for Plaintiffs "to recover against the Defendants for the alleged fraud conducted by the Defendants that resulted in the alleged harm to the Plaintiffs."  *Id.* ¶ 19, 27.  Defendant argues that given the small number of paragraphs in the pleadings which actually refer to an alleged fraudulent conveyance of the Property,[8] as well as the fact the none of the five prior state court actions mention the alleged fraudulent conveyance, it is clear that "the primary purpose of the complaint is to recover not [less] than $15,000,000 from the Defendants based upon their alleged fraudulent acts committed as against Capone."  *Id.* ¶ 20.

---

[8]     Although Defendant refers to the language of the Amended Complaint, as noted above, the relevant pleading for the Court's consideration is the originally filed Complaint, and specifically ¶¶ 45 through 49.

According to Defendant, "[i]t was not until the Plaintiffs determined that the bankruptcy trustee was going to properly recover the equity in the property for the benefit of all of the creditors that allegedly suffered losses as a result of [ ] Goldan's actions that they [ ]came up with the instant argument." *Id.* ¶ 21.

In opposition, Plaintiffs contend that they have indeed pled all the necessary elements of a "claim for a fraudulent conveyance or a constructive trust." Pls. Opp'n at 2. According to Plaintiffs, the pleadings[9] contain allegations that the conveyance of the Property encompassed numerous "badges of fraud," including Defendant Mark Goldman's transfer of his joint interest in the property to his wife, Defendant Andrea Goldman, without fair consideration. In addition, Plaintiffs assert that the pleadings "specifically alleged that Mark Goldman engaged in that conveyance while facing claims arising from his crimes, with the intent to defraud those investors and creditors . . . ." *Id.*[10]

Plaintiffs also maintain that where, as here, fraudulent conveyance claims arise under the New York Debtor and Creditor Law, "such fraudulent conveyance claims are generally asserted in connection with an action to recover money damages." *Id.* at 2-3 (collecting cases). According to Plaintiffs, the purpose of the *lis pendens* is to "give the world notice that the

---

[9]     Plaintiffs' argument refers to the allegations contained in the Amended Complaint, rather than the original Complaint. The Court has determined, however, that Plaintiffs' references in this portion of their opposition letter to the Amended Complaint also apply to the original Complaint.

[10]     In their opposition, Plaintiffs also assert that their pleading contains a specific allegation that the conveyance of the Property "rendered [Mark Goldman] insolvent." *Id.* While this might be true of the Amended Complaint, the original Complaint actually avers that the alleged fraudulent transfer "was done when Goldman was insolvent and subject to the claims of Capone and the other victims of Goldman's criminal Ponzi scheme." Compl. ¶ 49.

plaintiff has a claim with regard to the fraudulently transferred property," and such purpose would be defeated if Plaintiffs had to wait until they obtained a "money judgment upon [their] monetary claims" because the Property could easily be transferred in the interim.  *Id.* at 3.

## IV.   **THE APPLICABLE LAW**

In accordance with Rule 64 of the Federal Rules of Civil Procedure, the Court must look to state law when analyzing questions regarding the *lis pendens*.  Fed. R. Civ. P. 64; *Ulysses I & Co., Inc. v. Feldstein*, 2002 WL 1813851, at *17 (S.D.N.Y. Aug. 8, 2002).  Section 6501 of the New York Civil Practice Law and Rules ("CPLR") provides that a "notice of pendency may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property . . . ."  Thus, a *lis pendens* constitutes "constructive notice" to all future purchasers or those seeking to encumber a property that "[a] person whose conveyance . . . is recorded after the filing of the notice is bound by all proceedings taken in the action after such filing to the same extent as a party."  *Id.*; *see also 5303 Realty Corp. v. O & Y Equity Corp.*, 64 N.Y.2d 313, 317-18 (N.Y. 1984).  Because a notice of pendency in New York is considered a "unique provisional remedy," *In re Sakow*, 97 N.Y.2d 436, 441(2002), Article 65 is "narrowly interpreted by New York Courts, both as to its procedural requirements and to its substantive application."  *Diaz v. Paterson*, 547 F.3d 88, 91 (2d Cir. 2008) (citing *5303 Realty Corp.*, 64 N.Y.2d at 320-21).

Section 6514 of the CPLR sets forth two grounds for cancellation of a *lis pendens*.  First, Section 6514(a) provides for mandatory cancellation in the following circumstances:

> The court, upon motion . . ., shall direct any county clerk to cancel a notice of pendency, if service of a summons has not been completed within the time limited by section 6512; or if the action has been

11

> settled, discontinued or abated; or if the time to appeal from a final judgment against the plaintiff has expired; or if enforcement of a final judgment against the plaintiff has not been stayed pursuant to section 5519.

Defendant does not appear to be moving for relief under this provision and, in any event, there has been no showing by Plaintiffs that circumstances requiring the mandatory cancellation of the *lis pendens* exist in this case.

However, CPLR § 6514(b) sets forth when the Court may, *in its discretion*, cancel a notice of pendency: "The court, upon motion of any person aggrieved and upon such notice as it may require, may direct any county clerk to cancel a notice of pendency, if the plaintiff has not commenced or prosecuted the action in good faith."  This discretionary cancellation provision "has been interpreted to encompass such grounds as failure of the complaint to state a cause of action affecting real property."  *Am Motor Club, Inc., v. Neu*, 109 B.R. 595, 598 (Bankr. E.D.N.Y. 1990).  This latter provision is the argument advanced by Defendant for relief, Def. Mot. ¶ 18, and consequently is where the Court focuses its analysis.

## V.    **DISCUSSION**

The Court's task here is not a simple one, particularly in light of the competing interests, the application of the nuances of state law regarding a *lis pendens* and the concurrent filing of the involuntary Chapter 7 petition against Goldan LLC.  However, the Court is obligated to sort out these issues within the parameters of the evidence which has been put before it as of the closing of the record after the June 16, 2009 expedited hearing on Defendant's Order to Show Cause.

A.      **The Timing of the Filing of the *Lis Pendens***

Section 362 of the Bankruptcy Code provides that the initiation of certain bankruptcy proceedings, such as the involuntary Chapter 7 bankruptcy petition filed against Goldan LLC, operates as an automatic stay of eight categories of activity.  11 U.S.C. § 362(a).  In particular, the automatic stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . . [or] any act to create, perfect, or enforce any lien against property of the estate."  11 U.S.C. § 362(a)(3), (4).

This Court need not, and should not, decide whether and to what extent the Property is part of the estate in the bankruptcy proceeding involving Goldan LLC.  Even if the Property is considered part of the bankruptcy estate, the law is clear that the filing of the *lis pendens* does not affect the estate, and therefore does not violate the automatic stay.  A *lis pendens* puts "the world on constructive notice that the property is the subject of a pending lawsuit."  *Am. Motor Club*, *Inc.*, 109 B.R. at 597.  At the same time, a *lis pendens* "does not secure a lien or claim against property or represent an 'exercise of control' over such property."  *In re Rhoades*, 1998 WL 912067, at *1 (S.D.N.Y. Dec. 29, 1998).  As noted, therefore, the filing of the *lis pendens* does not fall within one of the eight categories of activity prohibited by Section 362, and consequently such filing does not violate the automatic stay.  *Id.*; *accord Knightsbridge Dev. Co., Inc. v. McCarthy Constr. Co.*, 884 F.2d 145, 147-48 (4th Cir. 1989) (finding that the *lis pendens* "though intended to inform prospective purchasers of a potential encumbrance, was not an 'exercise of control' over the property within the meaning of Section 362"); *see also United States v. Inslaw, Inc.*, 932 F.2d 1467, 1473 (D.C. Cir. 1991) (noting in dicta "[n]or does the filing

13

of a *lis pendens* violate the stay (at least where it does not create a lien), even though it alerts prospective buyers to a hazard and may thereby diminish the value of estate property").

Accordingly, Plaintiffs' filing of the *lis pendens* after the commencement of the bankruptcy proceeding in the instant case does not result in the *lis pendens* being declared a nullity.

**B.     Whether the *Lis Pendens* Should Be Cancelled**

**1.     General Legal Standard**

The propriety of the *lis pendens* turns on whether the pleadings state a cause of action for which "the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property." *DLJ Mortgage Capital, Inc.*, 2009 WL 1652253 at *2 (quoting CPLR 6501). In examining whether the *lis pendens* is proper, the Court must accept as true at this stage all allegations in the Complaint but must further "look to the primary purpose of the action," rather than simply rely on the stated demand for relief. *Am. Motor Club, Inc.*, 109 B.R. at 598 (citing *Will of Sabatino*, 90 Misc.2d 56, 57-58 (N.Y.Surr.Ct. 1977)). In *American Motor Club, Inc.*, Chief Judge Duberstein outlined the subsequent steps to be taken by the Court in analyzing the "primary purpose" issue:

> The court then determines if the lawsuit directly relates to the property or merely involves it indirectly. The test is whether the plaintiff makes claim to some right, title, or interest in the lands of the defendant which might be lost under the recording acts in the event of a transfer of the subject property by the defendant to a purchaser for value and without notice of the claim.

109 B.R. at 598 (citing *Braunston v. Anchorage Woods, Inc.*, 10 N.Y.2d 302 (1961)).

2.     *Scope of Review*

The New York Court of Appeals has recognized "the relative procedural ease" with which a *lis pendens* may be filed – a party must simply serve a summons, file the complaint, and file a notice of pendency containing "the names of the parties, the object of the action, and a description of the property." *5303 Realty Corp.*, 64 N.Y.2d at 319. To "counterbalance the ease with which a party may hinder another's right to transfer property," however, the Court of Appeals has directed that a party filing a notice of pendency strictly comply with the procedural requirements set forth in the New York Civil Practice Law and Rules ("CPLR"). *Id.* at 320. When determining whether a *lis pendens* may be cancelled in a court's discretion, the Court of Appeals has observed that "the court essentially is limited to reviewing the pleading to ascertain whether the action falls within the scope of CPLR 6501." *Id.* In this regard, the Court of Appeals has stated:

> The same considerations that require strict compliance with the procedural prerequisites also mandate a narrow interpretation in reviewing whether an action is one affecting "the title to, or the possession, use or enjoyment of, real property" (CPLR 6501). Thus, a court is not to investigate the underlying transaction in determining whether a complaint comes within the scope of CPLR 6501. Instead, in accordance with historical practice, the court's analysis is to be limited to the pleading's face.

*Id.* at 321; *see also DLJ Mortgage Capital, Inc. v. Kontogiannis*, 2009 WL 1652253 at *3.

At least one New York court has chosen to delve into the merits of the action as part of its decision whether to cancel a notice of pendency. *See Hercules Chem. Co., Inc. v. VCI, Inc.*, 118 Misc.2d 814, 824-25 (N.Y.Sup.Ct. 1983) (finding due process requires a court to undertake "a prompt determination of the *bona fides* of the claims" on a motion to cancel a notice of

15

pendency).  The majority of courts considering this question, however, have opted for compliance with the Court of Appeals' guidance in *5303 Realty Corp.* and have concluded that "the merits should not be examined as on a trial of the case, but merely that consideration should be given to the pleadings to assure that the allegations in the complaint, when read in their entirety, possibly entitle the plaintiff to its prayer for relief as specified in the 'wherefore clause.'"  *Am. Motor Club, Inc.*, 109 B.R. at 598 (collecting cases); *Schlesinger v. Schlesinger*, 2002 WL 221100, at * 5 (N.Y. Sup. 2002).  This Court adopts the majority view and recommends the same to Judge Feuerstein.

### 3.    Merits of Defendant's Motion to Cancel the "Lis Pendens"

Defendant Andrea Goldman asserts that the *lis pendens* should be cancelled because Plaintiffs have not alleged any causes of action that seek judgment directly affecting the Property. In opposition, Plaintiffs contend there are two reasons that the *lis pendens* is properly filed and should not be cancelled.  First, the Complaint contains an allegation that the Property was fraudulently conveyed in violation of the New York Debtor and Creditor Law.[11]  According to Plaintiffs, a judgment on such a cause of action affects title to the Property and, as such, an accompanying *lis pendens* may not be cancelled.  Second, Plaintiffs assert that they have alleged a claim for a constructive trust which, by definition, is a form of relief affecting title to the Property.

---

[11]    The Complaint does not specifically name the New York Debtor and Creditor Law as the basis for Plaintiffs' fraudulent conveyance allegations.  However, the wording of ¶¶ 44 through 49 contains the unmistakable elements of such a claim.  In addition, Plaintiffs' opposition papers assert that this claim is made under Sections 273, 275, and 276 of that statute.  *See* Pls. Opp'n at 2; *see also A.J. Heel Stone, LLC v. Evisu Int'l, S.R.L.*, 2006 WL 1458292, at *3 (S.D.N.Y. May 23, 2006).  To read the Complaint in any other way would result in elevating form over substance.

### a.   New York Creditor and Debtor Law

Plaintiffs claim that the notice of pendency is properly filed because they have adequately

pleaded that the Property was fraudulently conveyed in violation of three provisions of the New

York Debtor and Creditor Law.[12]  First, Section 273 of the statute provides that:

> Every conveyance made and every obligation incurred by a person
> who is or will be thereby rendered insolvent is fraudulent as to
> creditors without regard to his actual intent if the conveyance is made
> or the obligation is incurred without a fair consideration.

N.Y. Debtor & Creditor Law § 273.  Second, Section 275 of the New York Debtor and Creditor

Law states that:

> Every conveyance made and obligation incurred without fair
> consideration when the person making the conveyance or entering
> into the obligation intends or believes that he will incur debts beyond
> his ability to pay as they mature, is fraudulent as to both present and
> future creditors.

*Id.* § 275.  Finally, Section 276 of the statute provides that:

> Every conveyance made and every obligation incurred with actual
> intent, as distinguished from intent presumed in law, to hinder, delay,
> or defraud either present or future creditors, is fraudulent as to both
> present and future creditors.

*Id.* § 276.

Whether Plaintiffs can sustain a claim under § 276 with regard to "actual intent" is a

premature question and not for the Court to determine at this juncture.  However, with respect to

-----

[12]   Fraudulent conveyance causes of action in New York are governed by the Uniform
Fraudulent Conveyance Act (UFCA), N.Y. Debt. & Cred. Law §§ 270-81.  "The UFCA 'is a set
of legal rather than equitable doctrines, whose purpose is not to provide equal distribution of a
debtor's estate among creditors, but to aid specific creditors who have been defrauded by the
transfer of a debtor's property.'"  *A.J. Heel Stone, LLC v. Evisu Int'l, S.R.L.*, 2006 WL 1458292,
at * 3 (quoting *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995)).

all three of these claimed statutory violations, the Court finds that the Complaint has established Plaintiffs as "creditors" within the meaning of the New York Debtor and Creditor Law. Section 270 of the statute broadly defines the term "creditor" as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." N.Y. Debtor & Creditor Law § 270. "[A] 'contingent' claim is one which has not accrued and which is dependent on some future event that may never happen." *Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp. 2d 341, 347 (N.D.N.Y. 2001) (citing *Shelly v. Doe*, 173 Misc.2d 200 (N.Y. Sup.Ct.1997), *aff'd as modified* 249 A.D.2d 756 (3d Dep't 1998)). Plaintiffs, who have asserted causes of action in the Complaint against Defendants Goldman and Daniels for fraud and conversion, have "contingent" claims and are "creditors" within the meaning of the New York Debtor and Creditor Law. *See Bulkmatic Transp. Co., Inc. v. Pappas*, 2001 WL 882039, at *11 (S.D.N.Y. May 11, 2001) ("Not only is there no inconsistency between Bulkmatic's concurrent status as a claimant and a creditor, but in fact, the debtor-creditor relationship usually arises as soon as the cause of action accrues."); *Trafalgar Power, Inc.*, 131 F. Supp. 2d at 347 (finding the existence of a party's counterclaims establishes that party as a "creditor" under the statute); *Lippe v. Bairnco Corp.*, 225 B.R. 846, 856 (Bankr. S.D.N.Y. 1998) ("These claimants, at the time of the Transactions, were creditors pursuant to § 270 of NYDCL, that is, they possessed claims against Keene that would permit them to assert fraudulent causes of action against it.").

With respect to Plaintiffs' claim under Section 273 of the New York Debtor and Creditor Law, the Court is mindful that the liberal notice pleading requirements of Fed. R. Civ. P. 8 apply. *See Bulkmatic Transp. Co., Inc.*, 2001 WL 882039 at *11. The allegations in the Complaint satisfy this notice requirement. Plaintiffs allege that (1) Defendant Goldman transferred

18

ownership of his share of the Property to his wife, (2) that this transfer "was done when Goldman was insolvent"; and (3) the transfer was made "without fair consideration."  Compl. ¶¶ 46, 47, 49.  Importantly, "actual intent" to defraud creditors is not an element that needs to be pleaded to establish a violation of this section of the statute.  Thus, the Court finds that Plaintiffs have successfully pleaded a cause of action under Section 273 of the New York Debtor and Creditor Law.

A claim asserted under Section 275 is treated similarly to claims made under Section 273 in that "fraudulent intent is presumed" and, therefore, need not be pled with particularity.  *See B&N Roofing & Sheet Metal, Inc. v. BFC Partners*, 22 Misc.3d 1133(A) (N.Y.Sup.Ct. 2009).  To establish a claim under Section 275, Plaintiffs must allege that a conveyance took place for no consideration or inadequate consideration, and that the transferor held "an intent or belief that insolvency would result."  *Wall Street Associates v. Brodsky*, 257 A.D.2d 526, 528 (1st Dep't 1999).  Here, as noted above, Plaintiffs have alleged that a conveyance took place without fair consideration.  Additionally, Plaintiffs maintain that the transfer was accomplished with "an intent to defraud Capone and Goldman's other creditors" when it was made in 2007 because the conveyance was made "when Goldman was insolvent and subject to the claims of Capone and the other victims of Goldman's criminal Ponzi scheme."  Compl. ¶¶ 46-49.  Accordingly, Plaintiffs have sufficiently pled a cause of action under Section 275 of the New York Debtor and Creditor Law.

To successfully plead a claim under Section 276, unlike under Sections 273 and 275, Plaintiffs must "plead an actual intent to defraud with particularity sufficient to meet the heightened standard of Rule 9(b)."  *Bulkmatic Transp. Co., Inc.*, 2001 WL 882039 at *11.

"Actual intent" can be proven by direct evidence or, as is more often the case, with circumstantial evidence, or "badges of fraud." *See id.* Such "badges of fraud," which are "circumstances that accompany fraudulent transfers so commonly that their presence gives rise to an inference of intent," include: (1) lack or inadequacy of consideration received; (2) a close relationship, either through family, friendship, or other close relationship, between the transferor and transferee; (3) information that the transferor was rendered insolvent by the conveyance; (4) the transferor's retention of possession, benefit, or use of the property; (5) suspicious timing or the existence of a pattern or series of transactions after the incurring of debt or a legal action against the transferor had been threatened; and (6) the use of fictitious parties. *Id*; *see also Capital Distrib. Services, Ltd. v. Ducor Express Airlines, Inc.*, 440 F. Supp. 2d 195, 203-04 (E.D.N.Y. 2006); *In re Adler*, 372 B.R. 572, 581 (Bankr. EDNY. 2007)

The Court finds that the Complaint alleges the existence of several "badges of fraud," such that the "actual intent" element of Section 276 has been pleaded with sufficient particularity within the meaning of Fed. R. Civ. P. 9(b). Plaintiffs have alleged that the transfer was made "without fair consideration," that the transfer was made between Mark and Andrea Goldman who are defined in the Complaint as husband and wife, that Defendant Mark Goldman was insolvent at the time of the transfer, and that Defendant Mark Goldman continued to reside at the Property as of the filing of the Complaint. Compl. ¶¶ 7, 46, 47, 49; *see also Bulkmatic Transp. Co., Inc.*, 2001 WL 882039 at *11 (finding complaint provided "sufficiently particularized circumstantial evidence" of actual intent to defraud when it contained numerous allegations of "badges of fraud"). Thus, the Court finds that Plaintiffs have sufficiently pleaded a cause of action under Section 276 of the New York Debtor and Creditor Law.

After a review of applicable case law, the Court concludes that a notice of pendency may not be cancelled where, as here, a cause of action for fraudulent conveyance in violation of the New York Debtor and Creditor Law has been sufficiently pleaded.  By contrast, the Complaint also avers that Plaintiffs are entitled to the imposition of a constructive trust as a remedy for Defendants' alleged violations of the New York Debtor and Creditor Law.  *See* "Wherefore" clause, Compl. ¶ 55.  The applicable case law makes clear, however, that a constructive trust is not an appropriate remedy for such statutory violations.  *See, e.g.*, *In re Ventimiglia*, 362 B.R. 71, 86 (Bankr. EDNY 2007) (declining to impose constructive trust when trustee "has obtained an adequate remedy at law to recover the funds transferred . . . as fraudulent conveyances"); *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 133-34 (2d Dep't 1986) (finding plaintiff was not entitled "to the imposition of a constructive trust . . . on the [fraudulently conveyed] property" because "such a remedy has no explicit mention in the Debtor and Creditor Law, the cases that have employed the term 'constructive trustee' in connection with a fraudulent conveyance have described transferees where the transfer was in derogation of the duty corporate directors and officers owe to creditors," and "even in those cases, constructive trusts were not employed as remedies") (internal citations omitted).  Thus, despite the Complaint's request for such relief, the imposition of a constructive trust is not an appropriate form of relief for alleged violations of the New York Debtor and Creditor Law.

As to the viability of a *lis pendens* in the current circumstances, the case of *Bennett v. Bennett*, 62 A.D.2d 1154 (4th Dep't 1978) is particularly instructive.  There, the plaintiff was the former wife of the defendant.  The defendant and his second wife initially purchased real property in Geneva, New York as tenants by the entirety, but five years later, the defendant

transferred his interest in the property to his second wife by quit claim deed.  *Id.*  At the time of

the transfer, the defendant was in arrears of support and alimony payments which were supposed

to be made to the plaintiff pursuant to the terms of a separation agreement.  The plaintiff

commenced the action to set aside the conveyance and also filed a notice of pendency.  *Id.*

Moving for cancellation of the notice of pendency, defendant claimed that the *lis pendens* was

inappropriately filed because "the underlying purpose of the suit is to enforce defendant['s]

personal contractual obligations under the separation agreement and is thus unrelated to the

Geneva realty."  *Id.*  The court found that the complaint had adequately asserted a cause of action

for a fraudulent conveyance under Section 273 the New York Debtor and Creditor Law.  *Id.*

Reading the plaintiff's complaint as alleging that her former husband was attempting to make

himself judgment-proof by transferring his property in order to defraud his creditors, the court

found that this "action is one in which a *lis pendens* may properly be filed since the judgment

demanded will affect the title to . . . real property."  *Id.* at 1155 (internal quotation marks

omitted).

The Court also finds a supportive context in the underlying factual circumstances set forth

in *Marine Midland Bank v. Murkoff,* 120 A.D.2d 122 (2d Dep't 1986).  In *Murkoff*, a judgment

creditor succeeded under the New York Debtor and Creditor Law in setting aside the judgment

debtor's conveyance of his interest in his jointly-owned home to his wife.  Not satisfied with the

relief granted, the creditor sought broader relief in the form of (1) termination of the tenancy by

the entirety and its transformation to a tenancy in common; (2) a money judgment against the

debtor's wife up to one-half the value of the property; and (3) a constructive trust to be imposed

on the interest the debtor transferred to his wife, compelling the wife to hold that interest for the

benefit of the plaintiff creditor, and payment to plaintiff of one-half the rental income from the

property.  *Id*. at 126.  After noting that a "transfer from husband to wife is ordinarily scrutinized

carefully," *id.* at 128, the court in *Murkoff* found that terminating the tenancy by the entirety

would be inappropriate since it would destroy the wife's right of survivorship.  *Id.* at 131.  In

addition, the court found that plaintiff creditor was not entitled to the imposition of a constructive

trust for its benefit on the property which was fraudulently conveyed.  *Id*. at 133.  In doing so, the

court held that

> [a]part from the fact that such a remedy has no explicit mention in
> the Debtor and Creditor Law, the cases that have employed the
> term "constructive trustee" in connection with a fraudulent
> conveyance [citations omitted] have described transferees where
> the transfer was in derogation of the duty corporate directors and
> officers owe to creditors . . . The creditor's remedy in a fraudulent
> conveyance action is limited to reaching the property which would
> have been available to satisfy the judgment had there been no
> conveyance; the limited remedies explicitly permitted under the
> statute confirm this interpretation.  The imposition of a
> constructive trust upon the transferee would provide the plaintiff
> with an equitable interest in the property which could not have
> been achieved solely by entering the judgment, even in the absence
> of a conveyance. [Debtor's] interest in the property may be reached
> by levy despite the fact that it stands in [wife's] name and the
> plaintiff may also resort to remedies provided by the CPLR for the
> collection of judgments. . . .

*Id*. at 133-34.  In *Murkoff*, the debtor corporation had no ownership interest in the residence, just

as Goldan LLC  has no ownership interest in the Goldman residence here.  The creditor in

*Murkoff* had succeeded in obtaining summary judgment under Debtor and Creditor Law §§ 273

and 273-a and the court directed the clerk to record the money judgments as liens against the real

property of the wife, to the extent of the husband's prior interest before the fraudulent

conveyance. *Id*. at 125. The creditor found this relief of limited value because the interest remained subject to the wife's right of survivorship. *Id*.

Similar to *Bennett v. Bennett*, the Court here finds that because Plaintiffs have adequately pleaded the existence of a fraudulent conveyance in violation of Sections 273, 275 and 276 of the New York Debtor and Creditor Law, they have sufficiently asserted claims for which the judgment demanded "will affect the title to, or the possession, use or enjoyment of, real property" within the meaning of CPLR § 6501. *See, e.g.*, *Resnick v. Doukas*, 261 A.D.2d 375, 376 (2d Dep't 1999) (action to cancel *lis pendens* was properly denied when complaint alleged that defendants fraudulently conveyed their interests in real property without adequate consideration in anticipation of judgment against them, and, as such, the action affected title to real property); *Moran v. Harting*, 227 A.D.2d 391, 392 (2d Dep't 1996) (cause of action alleging the defendant fraudulently conveyed his interest in his house to his wife without consideration and in anticipation of a judgment against him was an action affecting the title to real property and fell within the scope of CPLR 6501); *Amev Capital Corp. v. Krik*, 172 A.D.2d 714, 714 (2d Dep't 1991) (notice of pendency properly filed in action alleging fraudulent conveyance of the defendant's one-half interest in his home to his wife); *Freudman v. Freudman*, 36 A.D.2d 968, 968 (2d Dep't 1971) (finding lower court erred in cancelling a notice of pendency when a fraudulent conveyance within the meaning of the New York Debtor and Creditor Law had been established).

Moreover, as the *Bennett* case illustrates, the *lis pendens* is properly filed even though the Complaint does not allege that the Property was not purchased with the alleged victims' money.

24

*See Bennett*, 62 A.D.2d at 1154-55 (finding *lis pendens* properly filed even when property at issue was "unrelated" to the defendant's contractual obligations under a separation agreement).

Further, the fact that Plaintiffs also assert causes of action seeking monetary damages does not render the filing of the *lis pendens* improper.  In *Weksler v. Yaffe*, 129 Misc.2d 663 (N.Y.Sup.Ct. 1985), the plaintiffs and defendants entered into a contract in which the defendants agreed to sell plaintiffs a certain apartment building.  The defendants subsequently cancelled the contract, and the plaintiffs commenced an action alleging breach of contract.  The complaint sought specific performance of the contract as well as money damages for, *inter alia*, a sidewalk repair project that plaintiffs had undertaken, and the expenditure of broker fees.  The plaintiffs also filed a *lis pendens* against the building.  The defendants moved to cancel the notice of pendency arguing that the plaintiffs were "not interested in obtaining the building but [sought] instead money damages."  *Id.* at 635.  Furthermore, the defendants argued that they were suffering a hardship in that they were incurring $13,000 per year to maintain the building, which had since become vacant and could not be sold due to the existence of the *lis pendens*.  *Id.* at 635. The court found that the defendants had failed to meet their burden to show that the *lis pendens* should be cancelled pursuant to CPLR § 6514(b).  According to the court, the plaintiffs had stated a "cognizable claim" for recovery, and the arguments proffered by defendants in support of cancelling the *lis pendens* were insufficient to demonstrate that the plaintiffs lacked good faith within the meaning of CPLR § 6514(b).[13]  *Id.* at 635-36; *See also Moran*, 227 A.D.2d at 392 (*lis*

---

[13]     The court in *Weksler* did, however, analyze the availability of the provisions of CPLR § 6515, which permits the court to cancel a notice of pendency if (1) the moving party gives "an undertaking in an amount to be fixed by the court" and the court finds that the undertaking will secure adequate relief to plaintiff, and (2) the plaintiff fails to give an undertaking in an amount fixed by the court to indemnify the moving party for damages it may incur if the *lis pendens* is

*pendens* properly filed in connection with the fourth cause of action for fraudulent conveyance, even when the plaintiff commenced the action to recover damages for breach of contract and fraud).

Based on the foregoing, the Court concludes that because Plaintiffs have adequately pleaded that the Property was fraudulently conveyed, in violation of the New York Debtor and Creditor Law, they have asserted a cause of action affecting title to the Property.  The fact that Plaintiffs have alternatively asked for money damages in other counts of the Complaint "does not serve as a waiver of [their] claim to the property and thus has no relevancy to the validity of the notice of pendency."[14]  *In re American Motor Club, Inc.*, 109 B.R. at 598.   Therefore, the Court finds that the filing of the *lis pendens* was proper and that Defendant has not presented evidence at this date which would establish the grounds necessary to cancel the *lis pendens*.

### b.      Constructive Trust

In the alternative, Plaintiffs contend that the *lis pendens* was properly filed because they have asserted an entitlement to the imposition of a constructive trust, which remedy, by definition, affects title to the Property.  A constructive trust is appropriate when "property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, [and so] equity converts him into a trustee."  *DLJ Mortgage Capital, Inc.*, 2009 WL 1652253 at *4 (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y.

---

not cancelled.  This Court does not address § 6515 here because such relief must be sought "upon motion of any person aggrieved," and no such motion is presently before this Court.

[14]      It is worth noting, however, that courts in this District have found that RICO claims seeking money damages do not support *lis pendens*.  *See DLJ Mortgage Capital, Inc*., 2009 WL 1652253, at *6.

380 (N.Y. 1919) (subsequent history omitted)).  Under New York law, Plaintiffs must meet four elements in order to prove entitlement to a constructive trust: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment."  *In re Ades & Berg Group Investors*, 550 F.3d 240, 245 (2d Cir. 2008) (citing *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121 (NY 1976)); *In re American Motor Club, Inc.*, 109 B.R. at 599 (citing *Brand v. Brand*, 811 F.2d 74, 77 (2d cir. 1987)).

The Court has already determined that the Complaint contains sufficient allegations of violations of Sections 273, 275, and 276 of the New York Debtor and Creditor Law, and, therefore, that the *lis pendens* was properly filed and should not be canceled at this time.  The Court notes that it is also well settled that an action seeking to impose a constructive trust upon real property "seeks a judgment affecting title to, or the possession, use, or enjoyment of real property and accordingly permits a notice of pendency to be filed in such action."  *In re American Motor Club, Inc.*, 109 B.R. at 599 (citing *Laucella v. Grant*, 126 A.D.2d 705 (2d Dep't 1987)).  Because Plaintiffs have established sufficient legal grounds for imposition of the *lis pendens* under the New York Debtor and Creditor Law,  the Court need not address Plaintiffs' contentions that it has effectively pleaded a constructive trust claim nor the efficacy of such claim.

## VI.    CONCLUSION

The Court is cognizant of Defendant Andrea Goldman's position that if the *lis pendens* remains on the property, she will not be able to continue to make mortgage payments because she has no current source of income.  According to Defendant, she will simply remain in the house until a foreclosure sale in which event all equity in the home will be lost not only to creditors of

27

Goldan LLC, but also to Plaintiffs as well.  As the Court has noted here, there is no "impediment" per se to the sale of the property based upon the *lis pendens*, depending upon the determination of the Bankruptcy Court whether the Property is part of the bankrupt estate. However, the Court is also not oblivious to the reality of the potential impact on a prospective purchaser which accompanies the existence of the *lis pendens*.  Likewise, despite the fact that appearances here may raise natural questions regarding the timing of the filing of the *lis pendens* as well as the motivation of Plaintiffs with regard to their procedural posture, the fact remains that under New York law, the *lis pendens* is properly filed.  To Defendant Andrea Goldman, such a result may hardly seem "equitable."  However, as the New York Court of Appeals has noted, a *lis pendens* can be imposed upon a property with "relative procedural ease."  *5303 Realty Corp.*, 64 N.Y.2d at 319 and "[u]sually, there is little a court may do to provide relief to the property owner."  *Id.* at 320.  There has been no claim here that the procedures in Article 65 of the CPLR have not been followed, so the conditions requiring mandatory cancellation under CPLR § 6514(a) are not present.  Furthermore, as set forth above, Defendants have not made the necessary showing that Plaintiffs have failed to "commence[] or prosecute[] the action in good faith" so as to warrant a discretionary cancellation under CPLR § 6514(b).  Defendant's burden to show a lack of good faith within the meaning of CPLR § 6514(b) is not easily met because "the presence of '*any* cognizable claim' is sufficient to establish good faith and there must be at least a substantial question to show the absence of good faith."  *Weksler*, 129 Misc.2d at 635 (emphasis in the original).

Therefore, for all of the foregoing reasons, I respectfully recommend to Judge Feuerstein that Defendant Andrea Goldman's motion to vacate the *lis pendens* be DENIED. .

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a) and (e).   Such objections shall be filed with the Clerk of the Court via ECF.  A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Sandra J. Feuerstein, and to the chambers of the undersigned .  Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the (10) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
       July 6, 2009

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge